Filed 7/3/24  In re I.G. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re I.G., a Person Coming Under the Juvenile Court Law. | B331605<br><br>(Los Angeles County Super. Ct. No. 23CCJP00691A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>E.G.,<br><br>　　　Defendant and Appellant. | |

　　　APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee.  Affirmed.

　　　Katie Curtis, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————————————

Appellant E.G. (father) appeals from juvenile court jurisdictional and dispositional orders asserting dependency jurisdiction over minor I.G. and ordering father to test for drugs. We affirm the orders.

### FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, the Los Angeles County Department of Children and Family Services (DCFS) received a referral indicating S.G. (mother) tested positive for marijuana and PCP when she gave birth to I.G. Mother also admitted she had used methamphetamine two weeks earlier. I.G. spent several days in the neonatal intensive care unit because he had "no active cry" at birth.

On January 3, a DCFS social worker interviewed mother at the hospital. Mother reported she was enrolled in a drug rehabilitation program and had arranged for I.G. to live with her at the rehabilitation facility. The social worker discussed a safety plan with mother, which required her to engage in rehabilitation services and check in with the social worker weekly. The social worker told mother I.G. could remain in her care as long as she remained in treatment. Mother and I.G. were discharged from the hospital in mid-January 2023 and began living at the rehabilitation facility.

Mother said she had a nine-year " 'on-again, off-again' " relationship with I.G.'s father. She denied having any plans to

return to a romantic relationship with him. A hospital social worker later reported father had visited mother and I.G. in the hospital "almost daily." Mother had told the hospital social worker that she and father had "an extensive domestic violence relationship."

During his initial interview, father told the social worker he smoked marijuana every two days, and he later tested positive for marijuana. Father stated he would stop smoking marijuana if necessary.

Both parents admitted past involvement with DCFS and the three other children they had together. Mother indicated past domestic violence with father had led to the children being removed from her custody. She said the last violent incident with father happened three years earlier. She admitted smoking marijuana and methamphetamine during her pregnancy with I.G. She had not obtained prenatal care because she did not want DCFS to remove the baby from her custody and her older children had already been removed.

Father indicated the DCFS cases concerning his older children with mother resulted from the parents' domestic violence and mother's drug use. Father admitted he had been in "multiple domestic violence relationships" and that he and mother had an extensive history of domestic violence. He reported the last violent incident was a year and a half earlier, in 2021. Father attributed the domestic violence to mother's continued use of methamphetamine. Although during prior dependency cases father had reunified with the other children he shared with mother, the children were removed again because of mother's continued drug use. Father reported that he was "tired of trying to fight for his children" and did not reunify. He did not feel

DCFS gave him a fair opportunity to raise the children, who were later adopted by a maternal family member. He indicated he did not intend to continue a romantic relationship with mother.

In early February 2023, mother told the social worker she was willing to participate in voluntary family maintenance services if she could move to an outpatient program. Mother reported there was "drama" between her and other residents at the rehabilitation facility, and she did not want I.G. to be exposed to any "negativity." The social worker reminded mother that the current safety plan allowed I.G. to remain in mother's care only so long as she remained at the rehabilitation facility.

The next day, mother was expelled from the drug rehabilitation program because she refused to engage in services and had "issue[s] with other residents." Father picked up I.G. from the facility and returned to his home, where he lived with a paternal cousin. The social worker observed the home was furnished and had appropriate food and clothing for I.G., and father had a plan to care for I.G. Around this time, father enrolled in a 12-step program to address his marijuana use.

Mother told the social worker she was entering a women's center to complete drug rehabilitation services. Around a week and a half later, a counselor from the center informed the social worker that mother had left the program almost immediately.

In late February, the social worker attempted to contact mother several times, but the calls went straight to voicemail and mother did not respond to the social worker's messages. Father reported that mother called him around this time and asked him to pick her up to visit I.G. When he refused, mother threatened him. Mother told father she was living "under a bridge off of Whittier Blvd." According to maternal aunt, mother went to stay

4

at maternal grandfather's home, but soon left, and was "most likely living in the riverbed in Pico Rivera."

On February 24, 2023, DCFS filed a petition alleging I.G. was a person described by Welfare and Institutions Code section 300, subdivisions (a), (b), and (j), due to the parents' history of engaging in domestic violence which resulted in I.G.'s siblings receiving permanent placement services; subdivisions (b) and (j), due to mother's substance abuse and father's failure to protect I.G. and his siblings from mother's substance abuse; and subdivision (b), due to father's substance abuse and mother's history of mental and emotional problems.[1]

At the initial hearing on March 10, 2023, the court ordered I.G. detained from mother and released to father. Father was to submit to weekly random drug testing as a condition of the release to him.

In April 2023, mother agreed to participate in random drug and alcohol testing. Mother missed all eight tests reflected in the record.

At the June 7, 2023 adjudication hearing, the juvenile court sustained the petition under section 300, subdivisions (b) and (j). The court found true the allegations related to mother's substance abuse, father's failure to protect I.G. and his past failure to protect I.G.'s siblings from mother's substance abuse, and mother's mental and emotional problems. Under section 300, subdivision (j), the court also found true allegations based on the parents' domestic violence, which led to I.G.'s siblings receiving permanent placement services and created a continuing risk of harm to I.G.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

At the August 22, 2023 disposition hearing, the court declared I.G. a dependent of the court. Father did not object to this decision or ask the court to consider an alternative disposition. The court ordered I.G. removed from mother and released to father under DCFS supervision. Father requested that the drug testing order be changed from weekly to "random or on suspicion." Father also asked that he be permitted to complete a 26-week domestic violence program or to address domestic violence in his individual counseling.

The court ordered father to submit to random drug testing for 90 days. If all test results were negative, the testing requirement would end, except for any on demand testing based on a suspicion that he was under the influence. As father had requested, the court also ordered him to complete a 26-week domestic violence program. Father's case plan additionally included individual counseling and parenting counseling. Father had started individual counseling in July and was scheduled to begin a Fundamentals of Fatherhood Program shortly after the disposition hearing.

Father timely appealed.

## DISCUSSION

I. **Father's Challenge to the Juvenile Court's Jurisdictional Findings is Nonjusticiable**

Father contends substantial evidence did not support the juvenile court's findings that I.G. was placed at risk of harm due to father's failure to protect I.G. and his siblings from mother's substance abuse. Father does not otherwise challenge the court's jurisdictional order. We conclude father has not raised a justiciable issue.

6

"It is a fundamental principle of appellate practice that an appeal will not be entertained unless it presents a justiciable issue." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 (*I.A.*).) "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*Id*. at p. 1490.)

It is further well established that " '[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

Here, in addition to the failure to protect findings father challenges on appeal, the juvenile court also found father's history of domestic violence against mother placed I.G. at substantial risk of suffering serious physical harm. The court additionally concluded mother's drug use and her mental and emotional problems put I.G. at risk of suffering serious physical harm. Father does not challenge these findings. Thus, even if he were to prevail on his arguments on appeal, we would not disturb the court's jurisdictional order. (*In re D.P.* (2023) 14 Cal.5th 266, 283–284 (*D.P.*); *I.A., supra,* 201 Cal.App.4th at pp. 1491–1492.)

While father asserts this court may grant him effective relief in ongoing proceedings, he fails to identify any tangible impact his successful appeal could achieve. Father identifies no

7

specific dispositional order that would be undermined by a reversal of the failure to protect allegations. He asserts he is currently seeking to terminate dependency jurisdiction under section 364, but, as he recognizes, the result of that effort will depend on the court's assessment of current conditions. (§ 364, subd. (c).) Striking jurisdictional allegations sustained as to father in June 2023 "would have neither legal nor practical consequence" in the ongoing proceedings, and therefore would not provide father any effective relief. (*I.A.*, *supra*, 201 Cal.App.4th at p. 1493.)

Father alternatively asks us to exercise our discretion to reach the merits of his arguments. Although "no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal," appellate courts often reach the merits when a juvenile court's jurisdictional findings could have consequences for the appellant beyond jurisdiction (*D.P.*, *supra*, 14 Cal.5th at pp. 286, 285), or when a challenged finding "is based on particularly pernicious or stigmatizing conduct." (*Id.* at pp. 285–286.)

Father contends the challenged allegations are likely to impact him in future proceedings because jurisdictional findings are "consistently examined by social workers and judges to determine current risk based on past events," citing *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134. However, a reversal of the order sustaining the challenged allegations in this case would not erase the prior sustained findings that father failed to protect I.G.'s siblings from mother's drug use. And, as father acknowledges, the ultimate inquiry in any dependency matter focuses on current circumstances. (*I.A.*, *supra*, 201 Cal.App.4th at p. 1495 [findings in dependency matters "require

8

evidence of present detriment, based on the then prevailing circumstances of parent and child"].) Even if a court in a future proceeding considered the challenged findings as true, the court would still be obligated to independently assess then existing circumstances to evaluate the risk of harm to the minor. We further cannot conclude that the failure to protect allegations were particularly pernicious or stigmatizing, particularly in view of the domestic violence allegations father does not challenge, which indicate he repeatedly perpetrated violence on mother.

Father has not suggested a specific practical, tangible impact the challenged language in the petition could have on him or his legal status. We therefore decline to exercise our discretion to reach the merits of his arguments regarding the court's jurisdictional findings. (*I.A.*, *supra*, 201 Cal.App.4th at p. 1493; see *D.P.*, *supra*, 14 Cal.5th at p. 278 [speculative harm insufficient].)

## II. The Juvenile Court Did Not Abuse Its Discretion in Declaring I.G. a Dependent of The Court and Ordering Father to Drug Test

Father also contends the juvenile court abused its discretion by declaring I.G. a dependent of the court and requiring father to test for drugs. We disagree.

As an initial matter, "a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court." (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338.) Father did not object to the juvenile court order declaring I.G. a dependent of the court. He also did not object to the March 10, 2023 order requiring him to submit to weekly random drug testing, or the August 22 order requiring 90 days of random drug testing. Indeed, father

9

affirmatively requested the random drug testing required by the latter order, and therefore forfeited his argument by inviting any error. (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1196.) Father notes forfeiture is not automatic but fails to articulate any reason why the doctrine should not apply here.

Even if these contentions were not forfeited, we would reject father's arguments. "After a juvenile court exercises jurisdiction over a child pursuant to section 300, it must determine the appropriate disposition for that child. [Citations.] The court has broad discretion in selecting a disposition that serves the child's best interests." (*In re M.D.* (2023) 93 Cal.App.5th 836, 856.) The court may declare the child a dependent of the court. (§§ 300, 360, subd. (d).) Alternatively, the court may order services to keep the family together under informal DCFS supervision. (§ 360, subd. (b).) After ordering informal supervision under section 360, subdivision (b), " 'the court "has no authority to take any further role in overseeing the services or the family unless the matter is brought back before the court" pursuant to [section 360, subdivision (c)].' " (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1259.)

We will not disturb the juvenile court's dispositional decision unless the court " ' "has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 (*Stephanie M.*).)

Father contends the court should have exercised its discretion to order informal supervision under section 360, subdivision (b), instead of declaring I.G. a dependent of the court. He argues informal supervision was appropriate because the social worker observed father was motivated and had the

capacity to protect I.G. and meet his needs. The social worker did not identify any significant safety concerns with I.G. remaining in father's care.

Yet, other factors indicate continued court oversight was appropriate. Father and mother had an extensive history of domestic violence that endangered I.G. and his siblings. Mother used drugs, and there was no evidence her drug use had ceased. Prior to the disposition hearing, mother left two drug rehabilitation programs and failed to complete a single drug test. Father indicated the past domestic violence between the parents was related to mother's drug use. Father and mother share three other children and a nine-year off-and-on romantic history. After the prior dependency case, which ended with the termination of parental rights, father and mother apparently maintained enough of a relationship that they conceived another child together, I.G. Given the not unlikely possibility of a future reconciliation, or, at a minimum, interaction between the parents, the juvenile court could reasonably conclude that a period of formal court supervision was necessary to protect I.G. from any recurring parental violence or further exposure to mother's drug use. In addition, father was only beginning to engage in three categories of services to comply with his court-ordered case plan. Declaring the child a dependent of the court allowed the court to ensure father completed those services. Considering all of these circumstances, the court was well within its discretion to declare I.G. a dependent of the court. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 319.)

The court also did not abuse its discretion by requiring father to test for drugs. Father contends this aspect of the disposition order was not tailored to the family's needs. He

11

observes that the court dismissed the jurisdictional allegation based on his drug use. Yet, the juvenile court may "formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings." (*In re K.T.* (2020) 49 Cal.App.5th 20, 25.) Father admitted to using marijuana every two days before I.G.'s birth. He tested positive for marijuana shortly after I.G.'s birth. I.G., an infant, was placed in father's care alone. Although father committed to stop using marijuana, it was not an abuse of discretion for the court to ensure father adhered to that commitment by requiring him to periodically test for drugs. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008 [juvenile court may reasonably conclude substance abuse is an obstacle that must be addressed in reunification plan through drug and alcohol testing].) Further, the order was time limited, requiring a three-month period of testing, followed by testing only on suspicion of drug use. The court's order was not arbitrary, capricious, or patently absurd.

## DISPOSITION

The juvenile court orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

LAVIN, J.